683 So.2d 812 (1996)
STATE of Louisiana
v.
Norvel LASSERE.
No. 95-KA-1009.
Court of Appeal of Louisiana, Fifth Circuit.
October 1, 1996.
*815 John M. Crum, Jr., District Attorney and Rodney A. Brignac, Asst. District Attorney, 40th Judicial District, Laplace, for Plaintiff/Appellee.
Laurie A. White, New Orleans, for Defendant/Appellant.
Before GRISBAUM, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, Norvel Lassere, appeals his conviction and sentence for possession of cocaine with intent to distribute. For the following reasons, we affirm and remand.

STATEMENT OF THE CASE
On April 20, 1994, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant with possession of cocaine with intent to distribute, a violation of La.R.S. 40:967 A. Defendant was arraigned the same day and pled not guilty. On August 30, 1994, the state filed a motion to amend the bill of information to charge defendant with possession with intent to distribute more than two hundred and less than four hundred grams of cocaine. The trial judge granted the state's motion the same day.
The trial court's minutes do not show that defendant was arraigned on the amended charge. However, the transcript of the trial proceedings for March 8, 1995 reveals that, upon reading the amended charge to the court, the clerk stated, "The defendant was present with his attorney and he was arraigned and pled not guilty to the charge." The case was tried by a twelve member jury on March 7, 8, and 9, 1995. On March 9, 1995, the jury returned a verdict of guilty as charged. On the same day, defendant orally noticed his intention to appeal.
On March 30, 1995, defendant filed a motion for a new trial. On the same day, he also filed a motion to reconsider his sentence, although he had not yet been sentenced. Subsequently, on June 14, 1995, the state filed a multiple offender bill of information, charging that defendant was a second felony offender.
The court heard and denied the new trial motion on July 12, 1995. On the same day, defendant was arraigned on the multiple bill. He denied the allegations of the bill. After a hearing on the matter, the court found defendant to be a second felony offender and sentenced him to twenty years at hard labor, with credit for time served. Immediately thereafter, defendant reasserted his motion to reconsider the sentence, which was denied by the court. Defendant then again stated his intention to appeal. On July 18, 1995, defendant enrolled appellate counsel and filed a notice of appeal.

STATEMENT OF THE FACTS
In the early morning hours of April 2, 1994, deputies Richard Dubus and Larry LeBlanc of the St. John the Baptist Parish Sheriff's Office were assigned to a special operations patrol. Their duties included patrolling the streets of public housing projects in Reserve, Garyville and Laplace. The deputies were dressed in uniform and rode in a marked police vehicle.
The officers were riding through the Elm Loop area in Laplace at 1:25 a.m. when they spotted defendant crossing the street in front of their car. The deputies recognized defendant because they had encountered him before in the course of their police duties. In addition, the deputies had received information *816 before going on duty that defendant was wanted in connection with two fugitive warrants in West Monroe. When defendant saw the police car, he began walking quickly toward one of the apartments in the complex, glancing back at the police.
As defendant was attempting to enter the apartment, the officers shined their spotlight on him to confirm his identity. Deputy Dubus then exited the vehicle and approached defendant on foot. The deputy informed defendant that he was wanted on the outstanding warrants. In response, defendant turned and ran around the side of the building. Deputy Dubus gave chase, while Deputy LeBlanc headed toward the other side of the building in a failed attempt to cut defendant off. Deputy Dubus continued the chase, trailing defendant into a nearby wooded area. Meanwhile, Deputy LeBlanc went back to the police car and communicated the officers' location over the radio.
Deputy Dubus apprehended defendant in the wooded area and informed him that he was under arrest. Defendant then struggled with the officer and attempted to take his flashlight. Deputy Dubus sprayed defendant with mace during the melee. Deputy Dubus radioed for backup and deputies Lawrence Sylvan and Nolan Anderson responded to the call.
The three officers forced defendant to the ground and handcuffed him. Defendant was then placed under arrest. The officers seized from defendant a clear plastic bag containing a white powdery substance, $3,159.60 in cash, and his driver's license, which had a white powder residue on it. Deputies Sylvan and Anderson transported defendant to the narcotics bureau of the sheriff's office, where he was booked and advised of his Miranda rights. Deputy Dubus turned over the evidence seized from defendant to detective Octavio Gonzales.
Detective Gonzales performed a field test on the white powdery substance which was positive for cocaine. The detective then catalogued the various pieces of evidence, photographed them, and turned them over to Detective Walter Chappel, the evidence custodian. Detective Chappel sent the evidence to the Louisiana State Crime Lab for analysis. Thomas Chin, who works for the crime lab, testified that the substance seized from defendant tested positive for cocaine, as did the residue on the driver's license.

ASSIGNMENTS OF ERROR
Defendant assigns the following errors: (1) the evidence presented was insufficient to support a guilty verdict, thereby denying defendant due process of law; (2) the court erred in allowing the admission of the evidence seized from defendant because it resulted from an illegal search and seizure; (3) defendant was denied effective assistance of counsel; and (4) defendant's sentence was unconstitutionally excessive. In addition, defendant requests that we review the entire record for errors patent.

DISCUSSION
In his first assignment of error, defendant argues that there was insufficient evidence to support his conviction for possession with intent to distribute cocaine (200-400 grams). Consequently, defendant argues that he was denied due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution.
Defendant contends that there was insufficient evidence to prove the requisite intent for the crime he was convicted of committing. The standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La. 1986); State v. Honore, 564 So.2d 345 (La. App. 5th Cir.), writ denied, 569 So.2d 968 (La.1990).
The crime of possession with intent to distribute cocaine requires proof that the defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it. La.R.S. 40:967 A; State v. Smith, 94-1502 (La.App. 4th Cir. 1/19/95), 649 So.2d 1078. Narcotics *817 offenses involving possession with intent to distribute require proof of specific intent. State v. Bannister, 95-172 (La.App. 5th Cir. 6/28/95), 658 So.2d 16, 18. Specific criminal intent is defined as that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). The intent to distribute may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1981).
In State v. Bannister, we listed the following factors which can give rise to a reasonable inference that the defendant had an intent to distribute: previous attempts to distribute; whether the drug was in a form consistent with distribution to others; the amount of the drug; expert or other testimony showing the amount found on the defendant to be inconsistent with personal use only; and paraphernalia evidencing an intent to distribute. 658 So.2d at 18.
In the instant case, no evidence was presented establishing that defendant possessed paraphernalia associated with cocaine distribution at the time of his apprehension. Nor was defendant observed engaging in activities consistent with distribution of cocaine. In addition, the cocaine seized from defendant was not packaged for distribution.
On the other hand, the state presented evidence that the amount of cocaine seized from defendant was inconsistent with personal use. Detective Gonzales, who was qualified as an expert witness in the field of narcotics investigation and trafficking, testified at trial that possession of one to three grams of cocaine is consistent with personal use. Thus, according to Detective Gonzales, defendant's possession of over two hundred grams of cocaine was not consistent with personal use.
Detective Gonzales further testified that the cocaine seized from defendant had a street value of $20,000 to $30,000. If the cocaine were converted into crack, Detective Gonzales estimated that the value would increase to between $50,000 and $75,000. In addition, Detective Gonzales testified that defendant had $3,159.60 in cash on him when he was arrested.
The jurisprudence establishes that mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. State v. Hearold, 603 So.2d 731, 735-36 (La.1992). Also, mere possession of a drug may establish intent to distribute if the amount of the drug in possession of the accused is inconsistent with personal use only. Id. at 736.
Here, the expert testimony of Detective Gonzales established that the amount of cocaine possessed by defendant was inconsistent with personal use. Further, Detective Gonzales testified that the cocaine had a high street value. In addition, defendant had a large amount of cash in his possession when he was arrested, which is consistent with drug distribution. The foregoing evidence is sufficient to establish the requisite intent on the part of defendant to distribute cocaine. Accordingly, defendant's conviction was constitutionally sufficient under the Jackson standard. Therefore, defendant's first assignment of error lacks merit.
In his second assignment of error, defendant argues that the trial court erred in failing to suppress the cocaine and money seized from him at the time of his arrest. Defendant contends that this evidence was the fruit of an illegal search.
The Fourth Amendment of the United States Constitution, as well as Article I, Section 5 of the Louisiana Constitution, prohibits unreasonable searches and seizures. Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. See La.C.Cr.P. art. 162. Accordingly, warrantless searches and seizures are per se unreasonable unless justified by a specific exception to the warrant requirement. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Moreno, 619 So.2d 62 (La.1993); State v. Vanderlinder, 575 So.2d 521 (La.App. 5th Cir.), writ denied, 580 So.2d 377 (La.1991). The state bears the burden of proving that such an exception applies. State v. Tatum, 466 So.2d 29 (La. *818 1985); State v. Diaz-Rubio, 615 So.2d 1124 (La.App. 5th Cir.1993), writ denied, 93-1010 (La.9/30/94), 642 So.2d 866.
The question of whether a particular search or seizure is reasonable is for the trier of fact. State v. Ellis, 94-599 (La.App. 5th Cir. 5/30/95), 657 So.2d 341, 360, writ denied, 95-1639 (La.1/5/96), 666 So.2d 300. It is well settled that a trial court's factual determinations are entitled to great weight on appellate review. Id. Accordingly, a trial court's decision to deny a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. Id.
In the instant case, the pertinent exception to the warrant requirement is a search incident to a lawful arrest. Once a lawful arrest has been made, a warrantless search of the person and of the area within his immediate control is permissible in order to remove any weapons and to prevent evidence from being destroyed. State v. Simmons, 95-309 (La.App. 5th Cir. 10/18/95), 663 So.2d 790; State v. Davis, 558 So.2d 1379 (La.App. 5th Cir.1990).
Initially, we must determine whether the police effected a lawful arrest of defendant. La.C.Cr.P. art. 213(4) allows a peace officer to make an arrest, without a warrant, when he has received "positive and reliable information that another peace officer from this state holds an arrest warrant" for the person arrested. Before going on patrol, Deputies Dubus and LeBlanc were informed that defendant was wanted in connection with two fugitive warrants in West Monroe. This is sufficient information to justify a warrantless arrest of defendant pursuant to La.C.Cr.P. art. 213(4). Accordingly, the police had sufficient cause to arrest defendant.
As mentioned earlier, defendant fled from the scene and had to be chased down and subdued by three officers. La.C.Cr.P. art. 201 defines an arrest as the "taking of one person into custody by another." Further, the article states that there must be an "actual restraint" of the person to constitute an arrest. At the time that Deputies Dubus, Sylvan, and Anderson wrestled defendant to the ground, informed him he was under arrest, and handcuffed him, all of the requirements for a legal arrest were satisfied. At this point, the officers were justified in conducting a search of the defendant's person and the area in his immediate control for weapons and evidence.
Having reviewed the record, we find that the search conducted by the officers following their arrest of defendant was constitutionally reasonable. Deputy Dubus testified that as he was handcuffing defendant's left arm, he felt a bulge in defendant's left sleeve. Before he could do a pat down search of defendant, the button on the left sleeve ripped open, allowing the money to spill out. As defendant's right arm was being cuffed, the officers saw clenched in his hand the clear plastic bag containing cocaine.
Clearly, the evidence seized by the officers was as the result of a search incident to a lawful arrest. Such a search is constitutionally reasonable under the Fourth Amendment. Accordingly, the trial court did not err in allowing the admission of the evidence. Thus, defendant's second assignment of error lacks merit.
In his third assignment of error, defendant argues that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and due process of law in violation of the Fourteenth Amendment of the United States Constitution. Defendant complains that he received ineffective assistance of counsel because his trial attorney did not object to the court's failure to instruct the jury regarding the law on specific criminal intent. Defendant admits that, due to his counsel's failure to lodge a timely objection, he is now precluded from raising on appeal the issue of an improper jury charge. Nevertheless, defendant urges us to review the allegedly defective jury charge in the interest of fundamental fairness.
The challenged jury instruction is as follows:
The defendant is charged with the violation of 40:967A(1), which says: ... It shall be unlawful for any person knowingly or intentionally to produce, manufacture, distribute or dispense or possess with the *819 intent to produce, manufacture, distribute or dispense a controlled dangerous substance classified in Schedule II and again cocaine is classified in Schedule II.
To convict a defendant of the offense charged. [sic] You must find beyond a reasonable doubt that the state proved every element of the offense charged.
We address first defendant's contention that we should review the jury charge despite the fact that his attorney did not lodge a contemporaneous objection to the charge. The general rule, as stated in La. C.Cr.P. art. 801, is that a party may not appeal the giving or failure to give a jury charge unless an objection is made before the jury retires or within such time as the court may reasonably cure the alleged error. In State v. Jynes, 94-745 (La.App. 5th Cir. 3/1/95), 652 So.2d 91, we reviewed a jury charge on the basis that a contemporaneous objection had been made by defendant. In our discussion of the issue, we noted that due process considerations may sometimes require that a jury instruction be reviewed even in the absence of a contemporaneous objection. Id. at 98; see State v. Williamson, 389 So.2d 1328 (La.1980) ("a substantial probability that jurors may have convicted the defendant under an incorrect definition of the crime justifies setting aside a conviction on due process grounds even in absence of a contemporaneous objection"). Thus, there is a legal basis for reviewing a jury instruction that was not objected to at trial.
In the instant case, we find that due process does not require us to review the challenged jury instruction. While we are mindful of the importance of the intent element in this case, we find that the challenged instruction is not constitutionally deficient. This is because the instruction gave the jury a correct statement of the law. Thus, there was no chance that defendant was convicted under an incorrect definition of the crime. Williamson, supra. Accordingly, defendant is not entitled to have the instruction reviewed on the merits.
The question remains as to whether the failure of defendant's counsel to object to the court's jury charge amounted to ineffective assistance. The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through post-conviction relief rather than direct appeal, so as to afford the parties an evidentiary hearing before the trial court and to create an adequate record for review. However, it is well settled that where the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Truitt, 500 So.2d 355 (La.1987); State v. Franco, 94-265 (La.App. 5th Cir. 11/16/94), 646 So.2d 1043, writ denied, 94-3099 (La.4/28/95), 653 So.2d 588. After reviewing the record, we find there is sufficient evidence contained therein to decide the issue on this appeal.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 13 of the Louisiana Constitution. When a defendant seeks reversal of a conviction based on ineffective assistance of counsel, he must satisfy both parts of the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, defendant must show that his attorney's performance was deficient. To carry this burden, defendant must show that the attorney committed errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The key question is whether counsel's performance was reasonable considering all the circumstances. State v. Sheppard, 94-694 (La.App. 5th Cir. 11/16/94), 646 So.2d 1130.
Second, defendant must show that the deficiency was so great as to prejudice the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The defendant must establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. There is no precise definition of *820 effective assistance of counsel; accordingly, any inquiry in this area must be specific to the facts of the particular case. State v. Peart, 621 So.2d 780 (La.1993).
When considering an allegedly improper jury instruction, the reviewing court must determine whether it is reasonably likely that the jury actually applied the challenged instruction in an unconstitutional manner, not whether the jury "could have" misapplied the instruction. Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); State v. Smith, 91-0749 (La.5/23/94), 637 So.2d 398, cert. denied, ___ U.S. ___, 115 S.Ct. 641, 130 L.Ed.2d 546 (1994). In determining whether it is reasonably likely that the jurors misapplied the instruction, the challenged terms are considered in relation to the instructions as a whole. State v. Jynes, 652 So.2d at 95.
We have reviewed the entire jury charge given in this case and conclude that the court correctly stated the law to the jury. The court instructed the jury as to all the elements of the crime charged. The charge complained of is not deficient simply because the judge chose not to give a more detailed description of specific criminal intent.[1] Because the charge was not deficient, defendant was not prejudiced by his counsel's failure to object. Accordingly, defendant's counsel was not ineffective under the Strickland standard.
In his fourth assignment of error, defendant argues that his sentence under the multiple bill of information was unconstitutionally excessive in violation of the Eighth and Fourteenth Amendments of the United States Constitution. Defendant makes two arguments in this regard. First, he argues that his multiple bill conviction was illegal because his guilty plea to the predicate felony was not given knowingly and voluntarily. Second, he argues that the sentence of twenty years at hard labor imposed by the trial court is constitutionally excessive.
In a multiple offender proceeding, the state must prove by competent evidence the existence of a prior felony conviction, and that the defendant is the person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092 (La.1982). The Louisiana Supreme Court set forth the scheme for allocating burdens of proof in multiple bill proceedings in State v. Shelton, 621 So.2d 769 (La.1993). The Shelton court stated:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea from, [sic], a minute entry, an "imperfect" transcript, or any combination thereof the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of Boykin rights. (footnote omitted).
Id. at 779-80.
In the instant case, a multiple bill hearing was held on July 12, 1995. Defendant entered into a stipulation with the state, *821 conceding that he was in fact the same person who was convicted of illegal discharge of a firearm on October 6, 1992. The state offered into evidence the entire record in the prior case, including the guilty plea transcript. Defendant then testified that when he pled guilty to the 1992 charge he did not understand that he was pleading guilty to a felony. Instead, defendant stated that he believed he was pleading guilty to a misdemeanor. Defendant further testified that he did not understand that the conviction could later be used to enhance a sentence on a subsequent felony. Defendant stated that he based his assumptions on the representations of the attorney who represented him at the time.
The judge studied the transcript of defendant's prior guilty plea and determined that the plea was made knowingly and voluntarily. Thus, the court adjudged defendant a second felony offender. After reviewing the guilty plea transcript from October 6, 1992, we conclude that defendant was properly "Boykinized" before he pled guilty. The judge explained to defendant that he had the right to a trial by jury and to confront his accusers, as well as a privilege against self-incrimination. The judge further explained that by pleading guilty, he was waiving those rights. Defendant indicated that he understood all the rights explained by the judge and that he voluntarily waived those rights.
Based on the foregoing, we conclude that the state satisfied its burden of producing a "perfect" transcript of defendant's prior guilty plea. Accordingly, defendant's multiple bill conviction is valid.
Defendant further complains that his sentence is excessive and that the trial court did not state an adequate basis for the sentence. Article I, Section 20 of the Louisiana Constitution prohibits the imposition by law of excessive punishment. Even a sentence within the prescribed statutory limit may violate a defendant's constitutional right against excessive punishment. State v. Sweeney, 443 So.2d 522 (La.1983).
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Bradham, 94-71 (La.App. 5th Cir. 5/31/94), 638 So.2d 428.
In the instant case, defendant's sentence is not constitutionally excessive because it is not grossly disproportionate to the harm caused society by his crime. Moreover, under our statutory scheme, defendant's sentence is illegally lenient, rather than excessive. Pursuant to La.R.S. 40:967 F(b), the correct sentencing range in this case, prior to enhancement, would have been between twenty and sixty years. The enhanced range would have been thirty to one hundred twenty years. La.R.S. 15:529.1(A)(1)(a). Accordingly, defendant's sentence of twenty years is ten years below the prescribed minimum sentence for his crime. Based on the foregoing, defendant's assertion that his sentence is excessive lacks merit.
The state did not raise the issue of defendant's illegally lenient sentence by motion or argument in the trial court. Nor did it raise the issue by appeal to this court. When the defendant alone has appealed and the state has neither answered nor filed its own appeal, an appellate court may not amend or set aside an illegally lenient sentence on its own motion. State v. Fraser, 484 So.2d 122 (La.1986); State v. Gonzales, 515 So.2d 819 (La.App. 5th Cir.1987). Thus, we are prevented from amending defendant's illegally lenient sentence.
Defendant next contends that the sentence was excessive because the trial court failed to state its reasons for sentencing defendant to five years above the minimum sentence. This argument is without merit for the above stated reasons, namely that defendant received an illegally lenient sentence, rather than one five years above the minimum sentence.
Finally, defendant has requested that we perform an error patent review of *822 the record pursuant to La.C.Cr.P. art. 920. For purposes of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or bill of information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir. 1990).
Defendant complains that the record does not reveal that he was arraigned on the amended bill of information. As mentioned earlier, the transcript of the March 8, 1995 trial proceedings reveals a statement by the court clerk that defendant had been arraigned on the amended charge and had pled not guilty. Further, the record does not show an objection by defendant based on the court's purported failure to arraign him on the amended charge. Accordingly, we conclude that any irregularity in the arraignment was waived by defendant pursuant to La.C.Cr.P. art. 555.
Our review does reveal that the trial court failed to comply with La.C.Cr.P. art. 930.8(C), which requires that at the time of sentencing the trial judge inform the defendant of the prescriptive period for post-conviction relief. Accordingly, the trial court is directed to inform defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Kershaw, 94-141 (La. App. 5th Cir. 9/14/94), 643 So.2d 1289.
La.R.S. 15:529.1(G) provides that any "sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence." The sentencing transcript in this case shows the trial judge failed to so stipulate. In addition, La.R.S. 40:967(G) provides that persons sentenced under that statute shall not be eligible for parole prior to serving the minimum sentence required by law. Under the foregoing statutes, the court should have imposed defendant's sentence without benefit of parole, probation, or suspension of sentence. In State v. Washington, 563 So.2d 530, 533 (La. App. 5th Cir.1990), we addressed the same issue as follows:
Initially, we note that the defendant's enhanced sentence was not specifically imposed without benefit of probation or suspension of sentence as required by La.R.S. 15:529.1 G. However, since the trial court did not, in fact, suspend any portion of the sentence or impose any probationary period, we find substantial compliance with the sentencing directives in the multiple offender guidelines.
Here, the trial court did not affirmatively grant a probationary period or suspension of sentence. Thus, the court was in substantial compliance with the statute. In regard to the court's failure to specifically deny defendant parole eligibility, we have previously held that where the state "fails to raise the issue by motion or argument to the court, the error will not be corrected on appeal." State v. Bannister, 658 So.2d at 19. In this case, the state did not challenge the court's failure to deny defendant parole eligibility. Accordingly, we will not correct the error on appeal.
Based on the foregoing, defendant's conviction and sentence are affirmed and the case is remanded to the trial court in accordance with this opinion.
AFFIRMED AND REMANDED.
NOTES
[1] In this regard, we note that the lay definition of "intention" is exceedingly similar to the statutory definition of specific criminal intent. For example, intention is defined as the "will, design, or resolve to do or refrain from doing an act." Funk & Wagnalls, Standard College Dictionary, Text Edition (1963). Specific criminal intent is characterized by the offender "actively desiring" certain prescribed consequences. La.R.S. 14:10(1). Based on the foregoing, we conclude that it is not reasonably likely that the jury misapplied the instruction.